IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**JAQUAY JACKSON and DANA RICE,**
*each individually and on behalf of all*
*others similarly situated,*

                                    *Plaintiffs,*

*v.*                                                    CAUSE NO. 3:22-CV-697-CWR-LGI

**MISSISSIPPI BEHAVIORAL HEALTH**
**SERVICES, LLC,**

                                    *Defendant.*

## <u>ORDER</u>

Plaintiffs Jaquay Jackson and Dana Rice allege that their former employer, Mississippi

Behavioral Health Services, LLC ("MBHS"), violated the Fair Labor Standards Act ("FLSA"),

29 U.S.C. § 201, *et seq.*, by denying overtime premium payments to employees who worked

over 40 hours in a workweek. *See* Complaint, Docket No. 1. Plaintiffs brought this action

"individually and on behalf of all other similarly situated current and former employees of

Defendant" MBHS. *Id.* at 1. As such, multiple plaintiffs have since joined their cause

(together, with Jackson and Rice, "Plaintiffs"). *See* Docket Nos. 5, 10, 65, 67, 93, 98, 99, and

102-05. Now, Plaintiffs move for certification of a collective action and issuance of court-

facilitated notice to potential opt-in plaintiffs. Docket No. 69.

Within their motion to certify, Plaintiffs also request the Court to toll the statute of

limitations for all collective members from May 31, 2024, the date their motion was filed, to

the date of this Order. *See id.* These issues are each before the Court. For the reasons that

follow, the motion is due to be granted in part. The collective action is certified, but considering MBHS's objections, the Court has modified Plaintiffs' proposed form of notice. Plaintiffs' request for tolling is granted.

## I.    Background

MBHS is a private community mental health center that provides services as authorized by the Mississippi Department of Mental Health. MBHS offers a convenient method of care to its clients, oftentimes meeting clients at their homes or other convenient locations. This includes remote telehealth sessions for clients who prefer to meet virtually. Because treatment is offered at a time and place most agreeable to clients' schedules, MBHS claims that this method of treatment sometimes requires "flexibility that does not fit into the typical 8-to-5 office setting." MBHS Response in Opposition, Docket No. 84 at 3. Thus, MBHS employees often work irregular hours to meet clients' needs.

MBHS currently has sixteen offices across the State of Mississippi. These offices serve as home base for MBHS employees, while care is provided in the surrounding communities. MBHS employs various positions to assist with facilitating treatment. Relevant here are the Mental Health Therapists ("MHT"), Community Support Specialists ("CSS"), and Peer Support Specialists ("PSS"). MBHS designates each of these positions as "Community Providers."

MBHS is largely funded by Medicaid, which only compensates for hours Community Providers spend directly offering client care. The MBHS compensation structure thus delineates between "billable" hours spent treating clients and "nonbillable" hours spent performing administrative tasks. Every week, Community Providers are generally required

to perform 30 hours of billable work.[1] They retain 10 hours to complete their nonbillable duties, such as travel, meetings, training, and logging work activities. Together, the time spent on billable and nonbillable work constitutes a classic 40-hour workweek.

If Community Providers complete their billable requirements, they are compensated for a 40-hour workweek. If they do not, then their weekly pay is subject to reductions. Moreover, if Community Providers work more than 30 billable hours in a workweek, MBHS pays a higher rate for each additional hour of care provided. MBHS refers to this as "incentive pay," which encourages Community Providers to work additional hours that may be required to meet clients' needs. This incentive pay is only offered for billable hours, where Community Providers offer care directly to clients.

Plaintiffs are former MBHS Community Provider employees. They filed this putative collective action alleging violations of the FLSA, against MBHS. Specifically, they allege that MBHS failed to properly compute and pay their overtime. Plaintiffs petition the Court to certify a collective of other Community Providers with potentially similar experiences.

Plaintiffs' request that the Court certify a collective composed of:

> All current or former Mental Health Therapists, Community Support Specialists, and Peer Support Specialists employed by Defendant [MBHS], within the last three years (plus any applicable tolling), who were paid based on "billable hours" worked, worked more than 40 hours in a workweek, and did not receive compensation at the rate of time and one-half for all hours worked over 40 in a workweek.

Plaintiffs' Memorandum, Docket No. 70 at 8. In addition to certification, Plaintiffs seek Court approval for their proposed form of notice and request equitable tolling for the statute of

---

[1] Because there are fewer care hours available to PSSs, rather than having a 30 billable hour weekly requirement, PSSs are only required to provide 90% of the care hours they are assigned each week.

limitations. MBHS opposes certification and all other petitions before the Court. It argues that neither Plaintiffs nor the members of the proposed collective are similarly situated such that certification is appropriate. The parties' respective positions are addressed below.

## II.   Legal Standard

Plaintiffs' motion embraces three issues for the Court's consideration: certification, notice, and tolling. The legal standard for each of these issues is addressed separately below.

### A.  Similarly Situated

"The FLSA allows, in pertinent part, an employee who alleges that his or her employer violated the FLSA's minimum wage requirement to initiate a suit 'for and [on] behalf of himself . . . and other employees similarly situated.'" *Sandoz v. Cingular Wireless, L.L.C.*, 700 F. App'x 317, 320 (5th Cir. 2017) (quoting 29 U.S.C. § 216(b)) (modification in original). When presented with a motion to certify a collective action, courts must determine whether the proposed plaintiffs are similarly situated to the named plaintiffs. FLSA collective actions afford plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." *Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329, 336 (5th Cir. 2023) (citations omitted) (modification in original).

Collective actions are not to be confused with class actions. While class actions require affected persons to opt-out of the suit, collective actions require similarly situated employees "to opt-in via written consent." *Swales v. KLLM Transport Servs., L.L.C.*, 985 F.3d 430, 435 (5th Cir. 2021); *see also Hubbard v. Gen. Dynamics Info. Tech., Inc.*, No. 2:18-CV-91-KS-MTP, 2019 WL 2774332 (S.D. Miss. July 2, 2019) (citations omitted) ("[U]nlike a class action filed under

4

Federal Rule of Civil Procedure 23(c), a collective action under § 216(b) provides for a procedure to 'opt-in,' rather than 'opt-out.'").

Historically, courts applied a two-step approach to certifying collective actions. *See Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). However, the Fifth Circuit has abandoned the two-step method. *See generally Swales*, 985 F.3d 434 ("*Lusardi* has no anchor in the FLSA's text or in Supreme Court precedent interpreting it. . . [w]e therefore reject *Lusardi's* two-step certification rubric."). To determine whether certification of a collective action is proper, courts in the Fifth Circuit must now "rigorously scrutinize the realm of 'similarly situated' workers . . . from the outset of the case" to "determine whether the requested opt-in notice will go to those who are actually similarly situated to the named plaintiffs." *Id.* at 434. If assessing liability would require "a highly individualized inquiry into each potential opt-in's circumstances," the proposed collective is not similarly situated, and certification must be denied. *Id.* at 442.

"The plaintiff bears the burden of showing that he and other prospective plaintiffs are similarly situated." *Barron v. Sterling Sugars Sales Corp.*, No. 6:21-CV-3741, 2022 WL 1571233, at * 2 (W.D. La. May 17, 2022). This requires demonstration of "a factual nexus that binds the claims together so that hearing all claims in one proceeding is fair to all parties and not beset with individual inquiries." *Klick v. Cenikor Found.*, 94 F.4th 362, 372 (5th Cir. 2024). Though *Lusardi* is no longer binding, the Fifth Circuit has reasoned that the factors outlined in *Lusardi* may still be useful in determining whether employees are similarly situated. *Loy*, 71 F.4th at 336-37. These factors include (1) the factual and employment settings of the prospective plaintiffs; (2) the various defenses available to the defendant and if any defenses are individualized rather than applying to the prospective plaintiffs as a whole; and (3) fairness

and procedural considerations. *Id.* at 336. Still, the use of these factors is not mandatory because "there is no one-size-fits-all analysis or mechanical test to apply." *Id.* at 337.

"Although the Plaintiffs have the burden to prove that the individual class members are similarly situated[,] the similarly situated determination is not an opportunity for the court to assess the merits of any claim by deciding factual disputes or making credibility determinations[.]" *Britt v. Mississippi Farm Bureau Cas. Ins. Co.*, No. 1:18-CV-38-GHD-DAS, 2022 WL 331210, at *1 (N.D. Miss. Feb. 3, 2022) (cleaned up and citations omitted). "[D]istrict courts in the Fifth Circuit agree that the similarly situated determination is not an opportunity for courts to assess the merits of the claim by deciding factual disputes or making credibility determinations." *Garcia-Alvarez v. Fogo De Chao Churrascaria (Pittsburgh) LLC*, No. 4:21-CV-00124, 2022 WL 2119542, at *5 (E.D. Tex. June 13, 2022). The only merits determination the Court may make at this time, is whether "merits questions can be answered collectively[.]" *Swales*, 985 F.3d at 442. But the Court notes that this determination "has nothing to do with endorsing the merits." *Id.*

## B. Notice

"[T]he Supreme Court has declined to determine what form of court-approved notice must take or its contents and instead has delegated these tasks to the district court's broad discretion." *Harris v. Hinds Cnty., Miss.*, No. 3:12-CV-00542-CWR-LR, 2014 WL 457913, at *7 (S.D. Miss. Feb. 4, 2014) (citing *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 171 (1989)). This Court has previously determined "[n]o further specificity is required[]" in a proposed notice beyond "clearly stat[ing] the allegation that the Defendant['s] overtime policy violates the FLSA. *Id.* "A plaintiff is typically allowed to use his [or her] preferred language in drafting the notice[,]" but the Court must intervene to address a defendant's concerns where there are

objections. *Burke v. Mgmt. & Training Corp.*, No. 3:16-CV-00152-NBB-JMV, 2017 WL 3166840, at *4 (N.D. Miss. July 25, 2017).

### C. Tolling

"The FLSA provides a two-year statute of limitations for non-willful violations and a three-year statute of limitations for willful violations." *Boswell v. St. Dominic Health Servs., Inc.*, No. 3:23-CV-151-CWR-LGI, 2024 WL 4374120, at *8 (S.D. Miss. Oct. 2, 2024). Plaintiffs request that the three-year statute of limitations be tolled from the date their motion to certify was filed to the date of this Order. "Under the FSLA, the commencement of a lawsuit does not toll the statute of limitations for putative class members but, instead, the statute continues to run until putative class members file consent forms." *Brown v. Phenix Transportation W., Inc.*, No. 3:13-CV-781-WHB-RHW, 2016 WL 3648274, at *4 (S.D. Miss. Mar. 31, 2016) (citing 29 U.S.C. § 256(b)). The doctrine of equitable tolling applies in FLSA cases and provides courts authority to "extend a statute of limitations in cases in which it would be inequitable to enforce" them. *Id.*

"The Fifth Circuit has held that for equitable tolling to apply, the plaintiff must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing.' Additionally, the circumstances underlying the request must show an external obstacle beyond the plaintiff's control, rather than self-inflicted delay." *Boswell*, 2024 WL 4374120, at *8 (quoting *Sandoz*, 700 F. App'x at 320). "The party invoking equitable tolling bears the burden of justifying the need for equitable tolling of the limitations period, but the decision to ultimately invoke equitable tolling in a particular instance is left to the discretion of the district court, subject to appellate

review only for abuse of discretion." *Williams v. D'Argent Franchising, L.L.C.*, No. 1:20-CV-1501, 2023 WL 3059192, at *21 (W.D. La. Apr. 23, 2023) (citation omitted).

## III.    Discussion

The FLSA generally requires employers to compensate employees who work more than 40 hours per week "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Plaintiffs allege that MBHS violated this requirement and now seek certification to facilitate other Community Providers joining their cause. The Court first considers whether the potential collective is similarly situated to the named Plaintiffs. Finding in the affirmative, the Court then analyzes Plaintiffs' proposed form of notice. Finally, the Court considers whether tolling is indeed equitable in this case.

### A. Similarly Situated

The Court must first "determine whether the requested opt-in notice will go to those who are actually similarly situated to the named plaintiffs." *Swales*, 985 F.3d at 434. Plaintiffs argue that the potential plaintiffs are similarly situated because, while employed at MBHS, all Community Providers (1) performed similar job duties, (2) were subject to the same payment policies and practices, (3) were unpaid for overtime work, and (4) are not exempt from overtime under the FLSA. Contrawise, MBHS asserts that the potential plaintiffs are not similarly situated and that determining whether they were unpaid for overtime requires impermissible individual inquiries. Because the Plaintiff bears the burden to prove the potential collective is similarly situated, the Court considers MBHS's arguments within its analysis of the Plaintiffs' proposed justifications.

1. Job Duties

Plaintiffs contend that "Community Providers, even those with different job titles, each had similar job requirements and duties." Plaintiffs' Memorandum, Docket No. 70 at 13 (citing sworn testimony). "Potential class members are considered similarly situated to the named plaintiff[s] if they are 'similarly situated in terms of job requirements and similarly situated in terms of payment provisions." *Harris*, 2014 WL 457913, at *4 (quoting *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007)). "[T]he [C]ourt need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated." *Pedigo v. 3003 S. Lamar, LLP*, 666 F. Supp. 2d 693, 698 (W.D. Tex. 2009). Thus, these "positions need not be identical but similar." *Id.* (citation omitted).

The Court finds the Community Providers to be similarly situated with respect to their job duties. Each provided mental health services to MBHS clientele. All Community Providers were required to schedule appointments, treat clients, and complete progress notes summarizing the treatments provided. Plaintiffs' Memorandum, Docket No. 70 at 13. In addition, each Community Provider was supervised in the same manner, and they were categorized the same for wage payment. *Id.* MBHS argues that certification must be precluded because Community Providers' work hours and travel distances varied each week, but they are mistaken. "[D]ifferences in how many overtime hours each plaintiff worked is not relevant to liability, and therefore does not require decertification." *Roberts v. Baptist Healthcare Sys., LLC*, No. 1:20-CV-00092-MAC, 2022 WL 4089819, at *11 (E.D. Tex. Aug. 9, 2022), *report and recommendation adopted*, No. 1:20-CV-92, 2022 WL 4084420 (E.D. Tex. Sept. 4, 2022) (citation omitted).

Although each potential plaintiff's workweek may be somewhat unique, their job duties are similar enough to avoid besetting a proceeding "with individual inquiries." *Klick*, 94 F.4th at 372. "[C]ollective action certification is not precluded by the fact that the putative plaintiffs performed various jobs in differing departments and locations." *Donohue v. Francis Servs.*, Inc., No. CIV.A. 04–170, 2004 WL 1161366, at *2 (E.D. La. May 24, 2004) (citation omitted). The potential plaintiffs' various driving times and working hours are of little consequence. "[T]he terms of the FLSA's collective action provision allow for differences[,]" and the differences cited by MBHS are not so severe as to render these job duties dissimilar. *Johnson v. Big Lots Stores, Inc.*, No. CIV.A. 04–3201, 2007 WL 5200224, at *9 (E.D. La. Aug. 21, 2007). Plaintiffs have satisfied their burden to prove that the putative members of the proposed collective share similar job duties.

2. <u>MBHS Policies and Practices</u>

Plaintiffs suggest that all Community Providers were subject to the same payment policies and practices at MBHS, and that these policies and practices violate the FLSA. "Evidence that collective members 'were affected by a common policy, plan, pattern or practice' can be helpful in establishing that employees were similarly situated." *Boswell*, 2024 WL 4374120, at *4 (quoting *Williams*, 2023 WL 3059192, at *3). Plaintiffs allege that "MBHS's policy and practice was to pay for 40 hours of work when Community Providers submitted 30 billable hours, but to almost never pay them an overtime premium for hours over 40." Plaintiffs' Reply, Docket No. 95 at 11.

Here, each Community Provider was required to perform at least 30 hours of billable work per week.[2] If Community Providers did not meet this standard, they were only paid for the actual time billed and not their "salaried" amount. Plaintiffs' Memorandum, Docket No. 70 at 15 (citing Jackson Delivery of Service Hours, Docket No. 69-27). If Community Providers exceeded 30 hours of billable work, they were still required to perform their nonbillable duties. While Community Providers were offered incentive pay for each billable hour beyond 30 in a week, the MBHS policies do not consider the additional time a Community Provider may be required to spend on nonbillable work. In sum, these are the MBHS policies to which all Community Providers were subjected, and Plaintiffs claim that overtime premium pay was neither offered nor received.

MBHS cites *Hubbard* in response, where a court in this district found that opt-in plaintiffs' "circumstances [were] simply too individualized to warrant a collective action." 2019 WL 2774332, at *10. But the facts in *Hubbard* that weighed against certification are far different than those at hand. There, the court determined that the potential plaintiffs' allegations for unpaid work presented a "host of varying scenarios." *Id.* These varying claims were "not situations common to all potential plaintiffs such that they were all victims of a common policy, particularly that resulted in an FLSA violation." *Id.* Whereas, here Plaintiffs allege that Community Providers suffered an FLSA violation due to their similar positions under MBHS's common policies. The Court determines that the putative members of the

---

[2] Community Providers were also required to create progress notes to account for services provided and were subject to pay reductions if these notes were untimely or incorrectly submitted. Plaintiffs' Memorandum, Docket No. 70 at 16 (citing MBHS Employee Handbook (Rev. June 2023), Docket No. 69-32).

proposed collective may have been affected by these common policies and practices that are dire to the case at bar.

3. <u>Unpaid Overtime</u>

Plaintiffs claim that MBHS did not record or track Community Providers' nonbillable hours, and that it never investigated whether 10 hours was a sufficient amount of time to complete their nonbillable tasks. Plaintiffs' Memorandum, Docket No. 70 at 18. While MBHS required Community Providers to record personal logs of their work activities, Plaintiffs assert that many Community Providers were unaware of this requirement because they were not trained to complete this task. *Id.* at 19. Because MBHS did not enforce this requirement, Plaintiffs allege that MBHS could neither compensate for nor track the actual hours Community Providers worked. Most importantly, Plaintiffs argue that completing these nonbillable duties often required Community Providers to exceed 40 hours of work in a week.

MBHS claims that Plaintiffs' allegations of overtime work are not based in fact because they lack records demonstrating the exact hours Community Providers worked. But "[i]t is the Defendants' burden to produce evidence to refute Plaintiff's claims that he [or she] worked overtime and that there are similarly situated employees who also worked overtime." *Bandy v. TRC Sols., Inc.*, No. 1:22-CV-144, 2024 WL 1601997, at *7 (W.D. Tex. Apr. 11, 2024). "Plaintiff[s] [do] not need to show evidence that other [collective] members worked overtime . . . a plaintiff need only come forward with evidence that she has (1) performed work for which she was improperly compensated [that] (2) shows the amount of unpaid overtime as a matter of just and reasonable inference." *Id.* at *6 (citation omitted). Plaintiffs'

allegations are supported by sworn testimony and MBHS has produced no such records to refute Plaintiffs' claims.

"[T]he employer is in the best position to keep accurate employment records for each of its employees." *Bass v. City of Jackson, Miss.*, 878 F. Supp. 2d 701, 713 (S.D. Miss. 2011) (citing *Escobedo v. Dynasty Insulation, Inc.*, 694 F. Supp. 2d 638, 647 (W.D. Tex. 2010)). Where an employer has not kept certain records, the Court must not "penalize" employees who cannot "prove the precise extent of uncompensated work." *White v. Patriot Erectors, L.L.C.*, No. 23-50524, 2024 WL 3181455, at *3 (5th Cir. June 26, 2024) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). Plaintiffs may "introduce a representative sample[,]" such as a collective of opt-in plaintiffs, "to fill an evidentiary gap created by the employer's failure to keep adequate records." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456 (2016). That is what Plaintiffs seek to do here.

MBHS submits that Plaintiffs have provided non-uniform and sometimes conflicting testimony regarding whether they were paid for certain nonbillable activities. But Plaintiffs' claims of uncompensated overtime work remain constant. "The need for individualized inquiries to determine the number of hours spent [on certain tasks] does not defeat certification . . . [because] this issue affects damages, not liability." *Maynor v. Dow Chem. Co.*, 671 F. Supp. 2d 902, 933 (S.D. Tex. 2009). The relevant issue herein is not whether MBHS did or did not compensate employees for certain duties; it is whether MBHS did not compensate them at a premium overtime rate for hours worked beyond 40 in a workweek.

Considered alongside their similar job duties, the Court finds that Community Providers could have worked beyond 40 hours in a workweek. Because of their placement under a common compensation policy, members of the putative collective similarly could

have been uncompensated or undercompensated for this work. These factors weigh in favor of similarly situated treatment.

    4.  <u>Community Provider Exemption Under the FLSA</u>

The FLSA provides several exemptions to the overtime pay requirement. MBHS argues that "all MHTs and many CSSs are exempt from overtime as learned professionals and thus have no claim for overtime." MBHS Response, Docket No. 84 at 36. This "learned professional" exemption is codified under 29 C.F.R. § 541.300. To fall within the exemption criteria, an employee must (1) meet certain criteria concerning the performance of professional duties, (2) meet certain minimum income thresholds, and (3) be paid on a salary basis. *Hewitt v. Helix Energy Sols. Grp., Inc.*, 15 F.4th 289, 290 (5th Cir. 2021), *aff'd*, 598 U.S. 39, 143 (2023). All three of these conditions must be met. *Id.* Each criterion is "necessary, but insufficient on its own, to avoid the overtime protections of the FLSA." *Id.*

MBHS posits that determining which Community Providers were exempt would require individual inquiries. The Court is not convinced this is true. While "[a]n employer seeking an exemption from the overtime requirements of the [FLSA] must prove that each employee is entitled to the exemption by plain and unmistakable evidence[,]" the Court has already determined all Community Providers have *at least* similar duties. *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 588 (6th Cir. 2014) (quoting *Hodgson v. Klages Coal & Ice Co.*, 435 F.2d 377, 382 (6th Cir. 1970)). A clear and unmistakable showing of the specific duties unique to each Community Provider position (CSSs, MHTs, and PSSs) may resolve this inquiry for the collective. Because all Community Providers are subject to the same payment plan, a demonstration can be made regarding each *position's* income threshold. Finally, whether Community Providers were paid on a salary basis may also be resolved collectively.

Plaintiffs have already cast doubt that MBHS paid community providers on a salary basis. To meet the salary-basis test, an employee must receive a "predetermined amount" that "cannot be changed because of 'the number of days or hours' an employee actually labors. . . [t]he amount must be paid without regard to that number" *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 54 (2023) (citing 29 C.F.R. § 541.602(a)). Plaintiffs allege that Community Providers were subject to reductions in their pay if they did not perform a certain number of billable hours in any given week, and thus, Plaintiffs argue Community Providers' wages do not pass the salary basis test. This too may be answered collectively, but nevertheless it is inappropriate for the Court to consider this issue on the present motion. *See Britt*, 2022 WL 331210, at *1 ("[T]he similarly situated determination is not an opportunity for the court to assess the merits of any claim by deciding factual disputes or making credibility determinations."). At this stage, the Court remains unconvinced that Community Providers are exempt from overtime under the FLSA.

The Court finds that the potential collective is similarly situated to the Plaintiffs. This collective will contain Community Providers, like the Plaintiffs, who performed similar job duties while employed at MBHS during the period of the alleged harm. These employees were subject to the same policies and practices and may have suffered the same circumstances that Plaintiffs allege have occurred. Even among the *Lusardi* factors, these potential members are similarly situated: (1) there are shared factual and employment settings of the prospective plaintiffs, (2) the various defenses available to the defendant may be argued collectively, and (3) proceeding as a collective would be fair and procedurally convenient. *Loy*, 71 F.4th at 336. Thus, the Court grants Plaintiffs' motion to certify the collective.

**B.  Notice**

MBHS has contested Plaintiffs' proposed form of notice to the potential opt-in collective. Plaintiffs have already modified their proposed notice to accommodate some of MBHS's objections. *See* Revised Notice, Docket No. 94. Still, there remain a few open items for the Court to address.

1.  <u>Reminder Notice</u>

Plaintiffs' request to distribute reminder notice through text message and post-card has been met with opposition from MBHS. *See* MBHS Response, Docket No. 84 at 45–46. While plaintiffs must supply "a reason for sending reminder notices[,]" defendants may refute this reasoning with evidence that "the proposed reminder notices will prejudice or burden [them] unduly." *Jones v. Cretic Energy Servs., LLC*, 149 F. Supp. 3d 761, 776–77 (S.D. Tex. 2015). "Across the country there is a split of authority on whether reminder notices should be allowed. . . [but] reminder notice also helps ensure that those potential plaintiffs, who read the original notice but forget about it in the hustle and bustle of daily life, are reminded at least once about their opportunity to join the lawsuit." *Norman v. Neighborhood Healthcare Providers, PLLC*, No. 2:19-CV-170-KS-MTP, 2020 WL 4873848, at *4 (S.D. Miss. Aug. 19, 2020) (quoting *Lawrence v. A-1 Cleaning & Septic Sys., LLC*, 2020 WL 2042323, at *5 (S.D. Tex. Apr. 28, 2020) (cleaned up). "District courts enjoy broad discretion in determining the form and content of court-approved notice[,] and this Court has permitted reminder notice when appropriate. *Birdie v. Brandi's Hope Cmty. Servs., LLC*, No. 5:17-CV-21-DCB-MTP, 2017 WL 2588089, at *4 (S.D. Miss. June 14, 2017).

On October 24, 2023, Plaintiffs' counsel mailed a letter to many current and former MBHS Community Providers. MBHS cites this letter to argue there is no need for reminder

notice because the potential opt-in plaintiffs were already notified. *Id.* Plaintiffs claim "reminder notice is appropriate because Community Providers most often work alone, for long hours, and spend much time traveling[.]" Plaintiffs' Reply, Docket No. 95 at 23. This is essentially the "hustle and bustle" noted in *Norman*. 2020 WL 4873848, at *4. The Court finds this reasoning sufficient, particularly considering that years have passed since these individuals were first contacted. Plaintiffs may mail and email reminder postcards and/or text a reminder message 21 days before the expiration of the opt-in period to those collective members who have not yet opted in at that point.

2.  Use of Social Security Numbers

Plaintiffs request MBHS to supply the last four digits of the social security numbers for Community Providers whose notice is returned as undeliverable. Plaintiffs' Motion, Docket No. 69 at 2. This Court has previously approved such disclosures in ordering FLSA notice. *See Harris*, 2014 WL 457913, at *8. MBHS opposes such provisions, and cites a slew of cases as authorities, but every case they have cited indicates that disclosure of social security numbers may be appropriate when other methods of contact are insufficient. *Compare* MBHS Response, Docket No. 84 at 46, n.24 *with Birdie*, 2017 WL 2588089, at *3 ("If notices are returned as undeliverable and the plaintiff is unable to effectuate notice on certain potential plaintiffs, then [the plaintiff] may renew her request for [social security numbers, among other things,] regarding those specific employees."); *Santinac v. Worldwide Lab. Support of Illinois, Inc.*, 107 F. Supp. 3d 610, 617 (S.D. Miss. 2015) (distinguishing that provision of social security numbers was inappropriate only because certification had not been made and plaintiffs were able to locate addresses by less intrusive means); *Brooks v. Illusions, Inc.*, No. 5:16-CV-31-KS-MTP, 2016 WL 6781244, at *2 (S.D. Miss. Nov. 16, 2016) ("Should Plaintiff be

unable to find members of the prospective class using the information provided, she should file a motion with the Court to compel the release of the last four digits of those specific members' social security numbers."). Here, Plaintiffs request only the last four digits of those potential members whose mail has returned as undeliverable. This is reasonable and aligns with this Court's precedent. Plaintiffs' request is approved.

   3.  <u>Substance of the Notice</u>

MBHS has objected to certain language within Plaintiffs' proposed form of notice. *See* MBHS Response, Docket No. 84 at 47-48. The Court addresses only those unresolved objections that merit discussion.

     a.  Title

MBHS suggests that the title should read, "Notice of Fair Labor & Standards Act Collective Action," and nothing more. MBHS offers no additional reason to suggest that this language is prejudicial. This objection is denied. The current title is sufficient and informative.

     b.  Mention of Moneys in Paragraph Two

MBHS objects to the following language directed to members who do not opt-in: "and you won't be able to receive any part of a money settlement or judgment that current and former MBHS employees may obtain under federal law." MBHS Response, Docket No. 84 at 47. MBHS claims that this entices members "through the mention of money and being left out." *Id.* This objection is sustained in part. Plaintiffs are directed to remove the word "money" from this sentence. Therefore, the full sentence must now read:

> "If you don't sign this Consent to Sue form, you won't join this lawsuit, and you won't be able to receive any part of a settlement or judgment that current and former MBHS employees may obtain under federal law."

c.   Description of Defendant's Claims

MBHS objects to the last sentence in the "What this lawsuit is about" section of the notice. This objection is sustained. MBHS claims it insufficiently describes their position and supplies substitute language that reads:

"MBHS denies that it violated the law, believes it paid these employees fairly, and disputes that these employees were eligible for overtime pay because they were either exempt from it or did not work it."

MBHS Response, Docket No. 84 at 47. "The proposed notice should contain a statement of Defendant's basis for disputing liability." *Britt*, 2019 WL 943404, at *6 (citing *Yaklin v. W-H Energy Servs., Inc.*, No. CIV.A. C-07-422, 2008 WL 1989795, at *4 (S.D. Tex. May 2, 2008)). The statement offered by MBHS accurately represents their position. Plaintiffs are hereby directed to replace the sentence in question with the description offered by MBHS.

d.   How to Join

MBHS argues that opt-in forms should be delivered to the Clerk of Court and not Plaintiffs' counsel. It cites another court in this district that determined opt-in notices should be sent to the Clerk. MBHS Response, Docket No. 84 at 48 (citing *Santinac*, 107 F. Supp. at 618). However, other courts in the Fifth Circuit have found that directing the notice recipient to contact plaintiffs' counsel aides "the interest of judicial economy and efficiency, minimizing the number of possible separate actions and serving as a filter to distinguish meritorious from frivolous claims." *Reyes v. Quality Logging, Inc.*, 52 F. Supp. 3d 849, 853 (S.D. Tex. 2014). This Court agrees with that reasoning. Thus, all opt-in forms will be delivered to Plaintiffs' counsel.

e.  Court Endorsement

The next MBHS objection the Court considers has two parts. First, MBHS argues the notice "should state that the Court has expressed no opinion about the merits of the case or made any finding that the plaintiffs' allegations are true." MBHS Response, Docket No. 84 at 48. This portion of the objection is sustained. Second, MBHS suggests that the first sentence of the second paragraph[3] should be removed because it "implies Court endorsement." *Id.* This portion of the objection is overruled.

Both issues implicate judicial endorsement in a notice, which is impermissible. The Court "has a duty to ensure that the notice does not appear to endorse the merits of the underlying claim." *Reyes*, 52 F. Supp. 3d at 853 (citing *Hoffmann-La Roche*, 493 U.S. at 174). Moreover, the proposed notice must sufficiently "make clear the Court's neutral position." *Id.*

Many courts require a plaintiff's notice to disclaim courts' neutrality. *See Reyes*, 52 F. Supp. at 853 ("[T]he notice clearly stipulates that 'there is no assurance that the Court will grant any relief to him or to you in this case.' The Court finds the inclusion of this statement sufficient to make clear the Court's neutral position."); *see also Burke*, 2017 WL 3166840, at *4 (Finding no endorsement because plaintiff "included a section within the proposed notice that clearly advises potential plaintiffs that the court has expressed no opinion as to the merits of the case."); *see also Britt*, 2019 WL 943404, at *8 (Finding no endorsement because

---

[3] This sentence reads: "The Judge has authorized this law firm (Getman, Sweeney & Dunn, PLLC, hereinafter "GSD") to send you this notice." Revised Notice, Docket No. 94 at 2.

"additional language within the notice adequately informs potential plaintiffs that the Court has made no ruling on the merits of this case.").

Because the language in the "What this lawsuit is about" section was replaced,[4] similar language of neutrality is currently excluded from Plaintiffs' proposed notice. Thus, Plaintiffs are directed to include the following sentence in their notice:

"The Court has expressed no opinion about the merits of the case or made any finding that the plaintiffs' allegations are true."

There is no need to amend the first sentence of the second paragraph, which merely states that the "Judge has authorized this law firm . . . to send you this notice." Revised Notice, Docket No. 94 at 2. That is a factual statement, which does not allude to deferential treatment in favor of any party.

## C. Equitable Tolling

Plaintiffs argue that tolling is proper because "potential opt-ins continue to lose claims while this motion is under consideration." Plaintiffs' Reply, Docket No. 95 at 25. Plaintiffs' motion to certify was filed on May 31, 2024, *see* Docket No. 69, and neither party is responsible for the time spent on this motion. Other courts have determined that "protracted litigation and opposition to certification and notice do not constitute external obstacles that prevent timely filing. *Williams*, 2023 WL 3059192, at *21. (citation omitted). But, in *Sandoz*, the Fifth Circuit explicitly held that some scenarios exist where protracted litigation may constitute an extraordinary circumstance. 700 F. App'x at 321 ("We do not hold that protracted litigation can never constitute an extraordinary circumstance"). This case presents such a scenario.

---

[4] Replacing this sentence removed the phase, "the Court hasn't made any decision yet about who is right." Revised Notice, Docket No. 94 at 2.

Among other things, extraordinary circumstances may be limited to those reasons beyond the control of the opt-in plaintiffs. *Williams*, 2023 WL 3059192, at *21. This does not include routine litigation. *Sandoz*, 700 Fed. App'x at 321. However, the Court's schedule is certainly beyond the opt-in plaintiffs' control, and neither party should face harm nor reward from the Court's timing. Said plainly, this delay was not caused by routine litigation.

MBHS also opposes tolling because the statute of limitations in this case was already tolled once from March 3, 2023 to May 1, 2024. *See* Order Approving Parties' Tolling Agreement, Docket No. 16. This tolling occurred almost two years before the date herein. Moreover, the existence of prior tolling alone does not make additional tolling inequitable. The Court finds the time spent considering this motion to be an extraordinary circumstance beyond the parties' control. Thus, tolling is equitable.

## III. Conclusion

For the reasons discussed above, it is hereby **ORDERED** as follows:

a) Plaintiffs' motion to certify a collective action of persons "similarly situated" pursuant to Title 29 U.S.C. § 216(b) is GRANTED;

b) Plaintiffs' proposed form of notice is accepted, subject to the changes ordered herein, and the Court authorizes issuance of the notice to collective members;

c) The opt-in period for putative members of the proposed collective shall expire 60 days after the date herein. Pursuant to Fed. R. Civ. P. 6(a)(1)(C), the opt-in period shall expire Monday, May 11, 2026;[5]

---

[5] "[I]f the period would end on a Saturday, Sunday, or legal holiday, the period continues to run until the same time on the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1)(C). Because the 60-day opt-in period would otherwise end on a Saturday, it must continue until the following Monday.

d) Defendants are ORDERED to provide, in a secure, electronic spreadsheet format, the first and last names, last known street addresses, phone numbers, email addresses, and employee numbers of the Potential Plaintiffs to Plaintiffs' counsel, according to the terms of the Notice. This information shall be provided within twenty-one (21) days from the entry of the Court's Order and in usable electronic form to reduce any delays in sending out the Notices. Should any notice to a potential plaintiff be returned as undeliverable, Defendants must provide the last four digits of that individual's social security number within ten (10) days of receipt of such notice from Plaintiffs' counsel;

e) the Court authorizes a reminder notice to be sent to potential opt-ins by mail, email and text 21 days before the expiration of the opt-in period; and

f) Plaintiffs' motion to toll the statute of limitations is granted.

**SO ORDERED**, this the 10th day of March, 2026.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE